# United States Bankruptcy Court
# District of Massachusetts

In re
**ROBERT B. LINEHAN and**
**NANCY A. LINEHAN,**
    Debtors

Chapter 7
Case No. 05-10233-JNF

## MEMORANDUM

### I. INTRODUCTION

The matter before the Court is the Motion to Dismiss Voluntary Petition filed by Michael J. Kemp and Deborah J. Kemp (collectively, the "Kemps"), judgment creditors of Robert B. Linehan and Nancy A. Linehan (collectively, the "Linehans" or the "Debtors"). The Kemps originally sought dismissal of the Debtors' Chapter 7 case on the ground that "the Voluntary petition was void *ab initio* because it was not signed by a guardian or next friend of the Linehans." The Debtors, by their guardian, filed an Opposition to the Kemps' Motion. The Court heard the Motion on May 10, 2005 and took the matter under advisement after granting the Kemps an opportunity to submit a supplemental

1

as failure to pay filing fees, and there have been no unreasonable delays in the administration of this bankruptcy proceeding. *See* 11 U.S.C. § 707(a). In view of the presumption in favor of granting the relief requested by the debtor, *see* 11 U.S.C. § 707(b), and the availability of remedies to the Kemps under the Bankruptcy Code, dismissal of the Debtors' case is unwarranted. If the Linehans have fraudulently transferred assets, the Chapter 7 Trustee, using his avoidance powers, *see* 11 U.S.C. §§ 544 and 548, can recover the property or its value for the benefit of all creditors. If the Debtors have misrepresented their financial condition on their Schedules or Statement of Financial Affairs, the Kemps have remedies available to them under 11 U.S.C. § 727(a)(1)-(7). If the Kemps have evidence or can obtain evidence that the Debtors have conspired with their "next friends" and their physicians for the appointment of a guardian, thereby committing fraud on the Probate and Family Court, the Kemps can move for relief from stay to appeal the decision of Judge Sahagian.

## IV. CONCLUSION

In view of the foregoing, the Court shall enter and order denying the Kemps' Motion to Dismiss.

By the Court,

*Joan N. Feeney*
Joan N. Feeney
United States Bankruptcy Judge

Dated: June 23, 2005
cc: Dana Johnson, Esq., Christopher J. Sullivan, Esq., Gary W. Cruickshank, Esq.

17

memorandum with respect to additional grounds for dismissal, namely that the Debtors filed their Chapter 7 case in bad faith to thwart collection of the Kemps' judgment and transferred assets allegedly for the purpose of defrauding the Kemps and other creditors. The issues presented are whether this Court should interpret 11 U.S.C. § 707(a) so as to conclude that "cause" includes bad faith and whether the Kemps have established that the Debtors filed their Chapter 7 petition in bad faith, warranting dismissal of their case for "cause."

The material facts necessary to decide the issues, except facts relating to the fraudulent transfer of assets, are not in dispute. Because the Kemps attached numerous exhibits to their pleadings, the Court shall treat their Motion to Dismiss as a Motion for Summary Judgment. *See* Fed. R. Civ. P. 12(b)(6), made applicable to this proceeding by Fed. R. Bankr. P. 7012. Neither the Kemps nor the Debtors requested an evidentiary hearing. Accordingly, the Court now makes its findings of fact and rulings of law in accordance with Fed. R. Bankr. P. 7052.

## II. FACTS

The Debtors filed a voluntary Chapter 7 petition on January 12, 2005 with the assistance of their attorney, Dana Johnson. On their Schedules of assets, they represented that their only assets were cash, household goods, wearing apparel, and jewelry worth a total of $500. On their Schedules of Liabilities, they listed an obligation to the Internal Revenue Service in an unknown amount and unsecured debt in excess of $600,000. On their Statement of Financial Affairs, the Debtors did not disclose any prepetition transfers

2

of assets.

On March 28, 2005, Jennifer S. Longo ("Longo"), the Debtors' daughter and Court appointed guardian, filed an amended petition, which she signed on the Debtors' behalf, along with amended Schedules. *See* Fed. R. Bankr. P. 1004.1 ("If an infant or incompetent person has a representative, including a general guardian . . . , the representative may file a voluntary petition on behalf of the infant or incompetent person.") On the Debtors' amended Schedule F, Longo listed unsecured debts of $695,839.68, including a debt to the Kemps in the sum of $218,544.15. The Debtors in their original Schedules, and Longo in the amended Schedules, disclosed that the Debtors' monthly expenses exceed their monthly income from social security by approximately $1,300.

Prior to the filing of their bankruptcy petition, the Linehans were embroiled in litigation with the Kemps. The Kemps had obtained a judgment against the Linehans and were pursuing collection proceedings against them in the Essex Superior Court, Department of the Trial Court. The Kemps' attorney, Christopher Sullivan, had repeatedly noticed the deposition of Robert Linehan but was frustrated in his attempts to depose him because of Linehan's conduct. Indeed, Judge Welch, in "Findings of Fact, Rulings of Law, and Decision," dated January 6, 2005, determined that Robert Linehan's counsel, Attorney Johnson, either intentionally or unintentionally, had misrepresented to Attorney Sullivan that Robert Linehan was unavailable for a deposition because he was at the Lahey Clinic suffering a stroke. Judge Welch determined that Robert Linehan had not sought medical assistance on the day of the alleged stroke, although he did so the next day. Judge Welch

3

observed in his decision that "there is a proceeding in the probate court that wishes to appoint a guardian for Mr. Robert Linehan because he is allegedly mentally ill." Nevertheless, he found that both Debtors "displayed a reluctance to attend a deposition." Judge Welch denied the Kemps' request for sanctions against the Linehans but ordered them to appear at depositions within the next 30 days.

Judge Welch was correct in finding that Guardianship Petitions were pending in Trial Court, Probate and Family Court Department, Essex Division. On December 15, 2004, Meredith Drinkwater and Dana Johnson, denominated as "two (or more) relatives or friends," filed petitions for the appointment of Longo as guardian for both Robert B. Linehan and Nancy Linehan, who are 64 and 63 years old, respectively, supported by medical certificates attesting to their mental illness due to severe depression and an incapacity to care for their personal and financial affairs.[1] The Probate Court issued citations on December 24, 2004, which were returnable on January 31, 2005.

Six days after Judge Welch's ruling, the Debtors filed their Chapter 7 petition.

---

[1] David Driscoll, D.O. stated in a medical certificate presented to the probate court dated December 6, 2004:
> Mr. Linehan is an unfortunate 64 yo [sic] gentleman who has severe coronary artery disease with multiple bypass surgery & stent placement, along with angiography/angioplasty. Furthermore his diagnosis is further complicated by poorly controlled diabetes, peripheral neuropathy and severe depression.
> Because of these compound diagnoses and history of inability to take control of his health, I support this petition for guardianship.

Similarly, Patrick J. Colbert, APRN, CS, a board certified clinical specialist in psychiatry and mental health, attested to Nancy Linehan's major, chronic and recurrent depression, agoraphobia, and generalized anxiety disorder both in a medical certificate dated November 29, 2004 and in a letter dated February 8, 2005.

4

Approximately three weeks later, on February 8, 2005, while their Chapter 7 case was pending, Probate Judge Sahagian entered a Permanent Decree of Guardianship, finding that the Linehans were incapable of taking care of themselves by reason of mental illness. *See* Mass. Gen. Laws ch. 201, § 6. The Permanent Decrees of Guardianship contained Judge Sahagian's findings that no objections were filed to the Guardianship Petition, although it is unclear whether creditors or parties in interest, other than the Debtors' heirs, were formally notified of the petitions.

The Debtors did not testify at the meeting of creditors. *See* 11 U.S.C. § 341(a). Attorney Sullivan represented that Longo appeared at the § 341 meeting, which was held on February 9, 2005, one day after her appointment, but was unable to answer questions posed to her about the ownership and disposition of assets belonging to the Debtors, including lakefront, residential property located at 189 Rum Ridge Road, Greenville, Maine which they conveyed to their son in May of 2002, and two pieces of heavy construction equipment which Robert Linehan leased from Caterpillar Equipment, equipment which the Debtors used at one time in their unincorporated construction business. Attorney Sullivan also represented that, other than a perfunctory appearance by an ostensibly secured creditor, no other creditors appeared at the § 341(a) meeting. The Chapter 7 Trustee corroborated Attorney Sullivan's statement, and represented that he had not been contacted by any creditors.

5

### III. POSITIONS OF THE PARTIES

A. <u>The Kemps</u>

The Kemps rely upon case law under 11 U.S.C. § 707(a), particularly <u>In re Cabral</u>, 285 B.R. 563 (B.A.P. 1st Cir. 2002), and <u>In re Marsico</u>, No. 01-12120-JMD, 2004 WL 97647 (Bankr. D. N.H. January 5, 2004), for the proposition that bad faith or lack or good faith can constitute cause for dismissal. They point to the Debtors' lack of cooperation in discovery in the state court collection action and allegedly fraudulent transfers of property to their son, including the Maine property and two pieces of heavy equipment, to support their contention that the Debtors have exhibited bad faith. They also point to omissions on the Debtors' Schedules and Statement of Financial Affairs, stating that Robert Linehan received income, which he did not report. They also attach the Affidavit of Arthur DeBenedictis, C.P.A., to their pleadings in which the accountant highlighted irregularities in the Debtors' bank accounts and payments to their children.

B. <u>The Debtors</u>

The Debtors, by their guardian, dispute the "facts" with respect to the alleged fraudulent transfers and omissions in their Schedules and Statement of Affairs outlined by the Kemps in support of dismissal. They argue that they have provided the Kemps with their medical records; that the Debtor, Robert Linehan, is bedridden and not working as the Kemps contend, that Robert Linehan, Jr. purchased the construction equipment, which Robert Linehan had leased, directly from Caterpillar Equipment, and that payments to any relatives were reimbursement for necessities.

6

## IV. DISCUSSION

### A. Applicable Law

The case law on the subject of dismissal of Chapter 7 cases for bad faith under 11 U.S.C. § 707(a) reflects a split of authority among courts considering the issue, and there is no controlling precedent from the United States Court of Appeals for the First Circuit. Circuit courts which have considered the issue of bad faith as "cause" for dismissal under § 707(a) have rendered thoughtful, but not consistent, decisions. *Compare* Industrial Ins. Servs., Inc. v. Zick (In re Zick), 931 F.2d 1124 (6th Cir. 1991) ("Dismissal based on lack of good faith must be undertaken on an ad hoc basis. . . . It should be confined carefully and is generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish lifestyle, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence."), *with* Huckfeldt v. Huckfeldt (In re Huckfeldt), 39 F.3d 829 (8th Cir. 1994) (dismissal under § 707(a) limited to extreme misconduct falling outside the purview of more specific Code provisions), and Neary v. Padilla (In re Padilla), 222 F.3d 1184 (9th Cir. 2000) (same).

In Zick, the Sixth Circuit affirmed the dismissal of a Chapter 7 case in which the debtor had just one creditor, his former employer who had obtained a mediation award of $600,000 nine days before the debtor filed his bankruptcy petition. The circuit court concluded:

> [T]the court based its decision on (1) the debtor's manipulations which reduced the creditors in this case to one; (2) the debtor's failure to make

7

> significant lifestyle adjustments or efforts to repay; (3) the fact that the petition was filed clearly in response to IIS' obtaining a mediation award; and (4) the unfairness of the debtor's use of Chapter 7 under the facts in this case. We believe that the factors noted by the bankruptcy court may be sufficient to support its findings of bad faith. Reliance on the factors indicated as cause for dismissal may be an appropriate exercise of discretion.

931 F.2d at 1128 (citations omitted).

In In re Huckfeldt, 39 F.3d 829 (8th Cir. 1994), the court discussed existing precedent, observing the following:

> The Sixth Circuit has expressly held that bad faith may be cause for dismissal under § 707(a), but only in "egregious cases." See In re Zick, 931 F.2d 1124, 1127, 1129 (6th Cir. 1991). The Fifth Circuit in considering whether there was cause to lift the automatic stay in bankruptcy stated:
>> Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings.
>
> In re Little Creek Development Co., 779 F.2d 1068, 1071 (5th Cir.1986). See generally In re Victory Constr. Co., 9 B.R. 549, 551-60 (Bankr. C.D. Cal.1981) (reviewing the historical development of the bad faith doctrine in rehabilitation and reorganization proceedings), vacated as moot, 37 B.R. 222 (9th Cir. BAP 1984). But the Fourth Circuit in dictum has suggested that bad faith may only be considered under § 707(b). See In re Green, 934 F.2d 568, 571 (4th Cir.1991).

In re Huckfeldt, 39 F.3d at 831-32. The Eighth Circuit further noted the problems associated with "the open-ended use of bad faith to dismiss Chapter 7 cases." Id. at 832. It recognized that perhaps "a different standard of conduct should be applied to debtors willing to surrender all non-exempt assets in a Chapter 7 liquidation proceeding, than to those who seek to reorganize or extend their debts under Chapter 11 or Chapter 13." Id. (citing In re Kragness, 63 B.R. 459, 465 (Bankr.D.Or.1986)). It also recognized that the bad faith inquiry could be "'employed as a loose cannon which is to be pointed in the direction

8

of a debtor whose values do not coincide precisely with those of the court.'" Id. (citing In re Latimer, 82 B.R. 354, 364 (Bankr. E.D. Pa. 1988)). The Eighth Circuit adopted the "narrow, cautious approach" formulated by the court in In re Khan, 172 B.R. 613 (Bankr. D. Minn. 1994), in which the bankruptcy court criticized the decision in Zick "for adopting a bad faith exception to Chapter 7 relief without statutory authority, and for basing bad faith decisions under § 707(a) on ability-to-pay factors that should be analyzed exclusively under § 707(b)." The circuit court limited bad faith dismissals under § 707(a) "to extreme misconduct falling outside the purview of more specific Code provisions, such as using bankruptcy as a 'scorched earth' tactic against a diligent creditor, or using bankruptcy as a refuge from another court's jurisdiction." Huckfeldt, 39 F.3d at 832 (citing Kahn, 172 B.R. at 620-26). Using the narrow standard set forth in Kahn, the circuit court affirmed the dismissal of a debtor's Chapter 7 bankruptcy case because it was filed to frustrate a divorce court decree and to push a spouse into bankruptcy, and because it involved the manipulation of the debtor's earnings to ensure that the Chapter 7 proceeding would achieve his non-economic motives. Id. at 832-33.[2]

In In re Padilla, 222 F.3d 1184 (9th Cir. 2000), the Ninth Circuit weighed in on the

---

[2] The court, noting that the debtor had completed his medical training as a surgeon, summarized the creditors allegations as follows:
> The Creditors alleged that Huckfeldt had threatened to file for bankruptcy during the divorce proceedings and had commenced this proceeding in defiance of the divorce decree for the purpose of shifting responsibility for assigned debts [in excess of $500,000] to Georgianne. The Creditors further alleged that Huckfeldt "has deliberately taken steps to reduce his annual income" to avoid payment of his debts through a Chapter 7 liquidation.

39 F.3d at 830.

9

controversy, siding with the Eighth Circuit in Huckfeldt, not the Sixth Circuit in Zick. In considering the propriety of the dismissal under § 707(a) of a gambler who had engaged in a so-called "credit card 'bust-out,'" accumulating almost $100,000 in credit card debt,[3] the Ninth Circuit in Padilla stated the following:

> The Sixth Circuit and a host of bankruptcy courts that have considered the issue have found bad faith to be a ground for dismissal under § 707(a). See, e.g., Zick, 931 F.2d at 1127 (bad faith can provide cause for a § 707(a) dismissal); In re Lacrosse, 244 B.R. 583, 587 (Bankr. M.D. Pa. 1999) (a Chapter 7 petition may be dismissed under § 707(a) for lack of good faith in filing the petition); In re Smith, 229 B.R. 895, 897 (Bankr. S.D. Ga. 1997) (debtor's lack of good faith in filing bankruptcy petition will constitute "cause" for dismissal of Chapter 7 case); In re Griffieth, 209 B.R. 823, 831 (Bankr. N.D. N.Y. 1996) (holding dismissal was justified under § 707(a) because the debtors' case was not filed in good faith); In re Sky Group Int'l, Inc., 108 B.R. 86, 90 (Bankr. W.D. Pa. 1989) (a showing of bad faith can result in dismissal under § 707(a)). Taking a different view, the Eighth Circuit and several bankruptcy courts have found bad faith as such to be an improper basis for a § 707(a) dismissal. See, e.g., Huckfeldt, 39 F.3d at 832 (stating that while some conduct giving rise to dismissal under § 707(a) can be characterized as bad faith, the issue is properly whether the petition should be dismissed "for cause"); In re Etcheverry, 242 B.R. 503, 506 (D. Colo. 1999) (holding that because there is no explicit "good faith" requirement in Chapter 7, bad faith cannot constitute "cause" for dismissal under § 707(a)); In re Landes, 195 B.R. 855, 855 (Bankr. E.D. Pa. 1996) (holding that a good faith filing requirement cannot be read into § 707(a), embracing In re Latimer, 82 B.R. 354 (Bankr. E.D. Pa. 1988), and tacitly overruling In re Marks, 174 B.R. 37 (1994) [sic]). As is discussed below, we agree with the Eighth Circuit that bad faith as a general proposition does not provide "cause" to dismiss a Chapter 7 petition under § 707(a).

Padilla, 222 F.3d at 1192. The Ninth Circuit added:

> Balanced against the relief that the Bankruptcy Code makes available to debtors are the protections the Code affords creditors and, through the

---

[3] A credit card "bust-out" is "the accumulation of consumer debt in anticipation of bankruptcy." 222 F.3d at 1188.

10

United States trustee or the court itself, the public. In the Chapter 7 context, four provisions allow creditors and trustees to object to the discharge of debt: (1) under 11 U.S.C. § 523(a)(2)(A) and (c)(1), a creditor may request that a debtor be prevented from discharging a particular debt for money, property, services, or credit obtained by fraud, false pretenses or misrepresentation; (2) under 11 U.S.C. § 727(a)(2), (c)(1), a creditor, the bankruptcy trustee, or the United States trustee may object to a Chapter 7 discharge generally, on the grounds that the debtor, with the intent to defraud a creditor, intentionally transferred or concealed property; (3) the court on its own or on a motion by the United States trustee may dismiss a Chapter 7 petition if the debts are primarily consumer debts and if granting relief would be a substantial abuse of the provisions of Chapter 7, see 11 U.S.C. § 707(b); and (4) 11 U.S.C. § 707(a) allows a court to dismiss a Chapter 7 petition "for cause" and sets forth three particular grounds that, including unspecified others, provide "cause" for dismissal. *see* 11 U.S.C. § 707(a)(1)-(3). Section 707(a) is the only ground raised by the Trustee. The three explicit grounds contained in § 707(a) have been described as being "technical and procedural" violations of the Bankruptcy Code. Katie Thein Kimlinger & William P. Wassweiler, The Good Faith Fable of 11 U.S.C. S 707(a): How Bankruptcy Courts Have Invented a Good Faith Filing Requirement for Chapter 7 Debtors, 13 Bankr.Dev. J. 61, 97 (1996). *See also* In re Motaharnia, 215 B.R. 63, 67 (Bankr. C.D. Cal. 1997) (noting that § 707(a) is geared toward maintaining the integrity of the bankruptcy process).

222 F.3d at 1191-92. The court concluded:

> We agree with the Eighth Circuit which stated that some conduct constituting cause to dismiss a Chapter 7 petition may readily be characterized as bad faith. But framing the issue in terms of bad faith may tend to misdirect the inquiry away from the fundamental principles and purposes of Chapter 7. Thus, we think the § 707(a) analysis is better conducted under the statutory standard, "for cause."

Padilla, 222 F.3d at 1192 (citing Huckfeldt, 39 F.3d at 832). In support of its conclusion, the circuit court then discussed canons of statutory construction and distinguished Chapter 7 cases from those filed under Chapter 13 and Chapter 7.[4] The Ninth Circuit

---

[4] The Ninth Circuit noted:
Statutory construction canons require that "[w]here both a specific and a

11

> general statute address the same subject matter, the specific one takes precedence regardless of the sequence of the enactment, and must be applied first." In re Khan, 172 B.R. 613, 624 (Bankr.D.Minn.1994) (citing Busic v. United States, 446 U.S. 398, 406, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980) and Preiser v. Rodriguez, 411 U.S. 475, 489-90, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)). Therefore, a debtor's misconduct should be analyzed under the most specific Code provision that addresses that type of misconduct. See Kimlinger & Wassweiler, supra, at 72.
>   Of the four Code provisions that protect the public and creditors from Chapter 7 debtors, three are specific in nature in that they can be used only in particular circumstances. See 11 U.S.C. § 523(a)(2)(A), (c)(1) (indebtedness obtained by fraud); 11 U.S.C. § 727(a)(2), (c)(1) (transfer of assets with intent to defraud a creditor); 11 U.S.C. § 707(b) (discharge of consumer debts would be substantial abuse of Chapter 7). Therefore, debtor misconduct falling within the particular circumstances addressed by one of the three provisions must be analyzed under that provision.
>   The fourth provision, 11 U.S.C. § 707(a), in reciting three technical and procedural grounds that provide "cause" for dismissal, functions as a "specific" Code provision. Yet, some courts have focused on the word "including," in § 707(a) and used it as a "general" Code provision that allows dismissal for bad faith. . . . No provision that protects Chapter 7 creditors and the public explicitly uses the words "good faith" or "bad faith." Therefore, the question of whether a Chapter 7 debtor's bad faith can provide "cause" for dismissal or grounds for preventing discharge under §§ 523(a)(2)(A), 727(a)(2), 707(b) or 707(a) necessarily depends on the nature of the debtor's actions or inactions that have given rise to the "bad faith" label and whether they are within the contemplation of specific Code provisions.

Padilla, 222 F.3d at 1192. The court also noted the following in support of its ruling:

> Chapters 11 and 13 of the Bankruptcy Code each contain a "dismissal for cause" provision that is structured like § 707(a) and includes the same or similar examples of "cause" as § 707(a). However, under the Chapter 11 and Chapter 13 provisions we have held that bad faith does provide "cause" to dismiss Chapter 11 and Chapter 13 bankruptcy petitions. What distinguishes Chapters 11 and 13 from Chapter 7 is the language of the Bankruptcy Code itself and the post-filing relationship between the debtor and his creditors. The Bankruptcy Code specifically mentions good faith in Chapters 11 and 13 when it permits a court to confirm a payment plan

12

affirmed the decision of the Bankruptcy Appellate Panel which had reversed the bankruptcy court's dismissal of the debtor's Chapter 7 case. The Ninth Circuit held that the debtor's conduct was the type of misconduct contemplated by 11 U.S.C. § 707(b), not § 707(a), and did not constitute "cause" for dismissal under §707(a).

B. Analysis

This Court is persuaded by and adopts the reasoning of the Eighth and Ninth circuits that "bad faith" does not generally constitute grounds for dismissal of Chapter 7 cases and finds the cases cited by the Kemps to be distinguishable from the facts in the

---

> only if it is proposed in good faith. No mention of good faith or bad faith is made in Chapter 7. Also, the post-filing debtor-creditor relationship is markedly different in liquidation and reorganization bankruptcies. Chapters 11 and 13, both reorganization chapters, permit the debtor to "retain its assets and reorder its contractual obligations to its creditors. In return for these benefits, . . . the debtor [must] approach its new relationship with the creditors in good faith . . ." Kimlinger & Wassweiler, supra, at 65. Chapter 7, a liquidation chapter, "requires no ongoing relationship between the debtor and its creditors" and should be available to any debtor willing to surrender all of its nonexempt assets, "regardless of whether the debtor's motive in seeking such a remedy was grounded in good faith." Id. at 65. In Eisen, we linked the good faith requirement implicit in a Chapter 13 bankruptcy with the good faith requirement for proposing a payment plan when we stated that "[t]o determine if a petition has been filed in bad faith courts are guided by the standards used to evaluate whether a plan has been proposed in bad faith." 14 F.3d at 470. The Bankruptcy Code's language and the protracted relationship between reorganization debtors and their creditors lead us to conclude that bad faith per se can properly constitute "cause" for dismissal of a Chapter 11 or Chapter 13 petition but not of a Chapter 7 petition under § 707(a).

222 F.3d at 1192-93 (footnotes omitted).

13

instant case. For example, In re Marsico, No. 01-12120-JMD, 2004 WL 97647 (Bankr. D. N.H. January 5, 2004), involved a serial bankruptcy petition filer who "had a long and tortured history with this Court spanning three years, consisting of two separate bankruptcy [Chapter 13] filings and producing three judicial opinions." Id. at *1. In that case, the bankruptcy court adopted the totality of the circumstances approach used by the United States Bankruptcy Appellate Panel for the First Circuit in In re Cabral, 285 B.R. 563 (B.A.P. 1st Cir. 2002), although Cabral involved the reconversion of Chapter 7 case that had been converted to Chapter 13 and did not involve dismissal of the Chapter 7 case. The Bankruptcy Appellate Panel for the First Circuit in Cabral observed the following:

> the Bankruptcy Court conducted its analysis under § 1307(c), making a determination of whether there was sufficient "cause" to warrant reconversion of the Chapter 13 case to one under Chapter 7. This is noteworthy because the Bankruptcy Court specifically indicated in its endorsement order that it was considering the Trustee's Opposition as a motion to reconsider conversion of this case from Chapter 7 to Chapter 13, which would seem to invoke an analysis of whether it was appropriate to convert from Chapter 7 to Chapter 13 in the first place under § 706(a). The Bankruptcy Court, however, approached the case as one where the case was converted to Chapter 13 "as of right," and then conducted an analysis of whether the Chapter 13 case should be "reconverted" to Chapter 7 pursuant to § 1307(c). According to at least one court, the distinction may be one of form, rather than substance. See In re Tardiff, 145 B.R. 357, 360 n. 14 (Bankr. D. Me. 1992). Circumstances which justify reconversion may be adequate to deny conversion in the first place. Id. (citing Finney v. Smith (In re Finney), 141 B.R. 94 (E.D.Va.1992), aff'd, 992 F.2d 43 (4th Cir.1993)). . . .

285 B.R. at 571-72.

In Marsico, the bankruptcy court acknowledged that the standard of conduct needed to reach bad faith under § 707(a) "may be different from that under Chapter 13 because of the control over the case given to a Chapter 13 debtor that a Chapter 7 debtor

14

does not have." *See* 2004 WL 97647 at * 6 (footnote omitted). It stated, however, that it believed the factors set forth in Cabral "can and should be applied to determining whether bad faith constitutes cause for dismissal under section 707(a)." Id. Those factors are:

> (1) whether the debtor misrepresented facts in his petition, unfairly manipulated the Bankruptcy Code, or otherwise filed his Chapter 13 petition in an inequitable manner;
> (2) the debtor's history of filings and dismissals;
> (3) whether the debtor only intended to defeat state court litigation; and
> (4) whether egregious behavior is present.

Cabral, 285 B.R. at 573; Marsico, 2004 WL 97647 at * 6.

The Court is not persuaded by the bankruptcy court's decision in Marsico and predicts that, were the First Circuit to consider the issue of whether bad faith is a ground for dismissal under § 707(a), it would adopt the reasoning of the Eighth and Ninth Circuits in Huckfeldt and Padilla, respectively, rather than employ the factor analysis articulated by the Bankruptcy Appellate Panel for the First Circuit in Cabral, which was reviewing this Court's decision to reconvert a Chapter 13 case to Chapter 7, rather than dismissal of the Chapter 7 under § 707(a).

Moreover, the Court concludes that, under the test articulated by the Eighth and Ninth Circuits, the Kemps have failed to establish "cause" for dismissal under § 707(a). The undisputed facts establish that the Linehans had not been declared incompetent at the time they commenced their Chapter 7 case. Moreover, their decision, if made while they were incompent, in effect, was ratified by Longo when she filed the amended Schedules and Statement of Financial Affairs.

The undisputed facts also establish that the Kemps hold a judgment and have been

15

frustrated in their attempts to collect that judgment because of the Debtors' refusal or inability to appear at depositions. Although the Kemps view the Debtors' conduct in filing their Chapter 7 case as a deliberate attempt to frustrate their collection efforts and have alleged fraudulent conveyances and omissions from the Schedules as evidence of bad faith, the Debtors dispute their contentions, and these disputes cannot be determined in the context of a motion to dismiss at case commencement.

The Debtors have established that they are incompetent. This Court lacks jurisdiction under the Rooker-Feldman doctrine to review the findings and conclusions of the probate court to that effect. *See* In re Zambre, 306 B.R. 428 (Bankr. D. Mass. 2004) ("The doctrine divests any lower federal court of jurisdiction to act as a 'super-appeals' court for a state court determination; only the Supreme Court has such authority."). Moreover, the Debtors have represented, through their guardian, that they have no non-exempt assets and have insufficient monthly income to satisfy their monthly expenditures. Their Schedules do not reflect a lavish lifestyle or an attempt to discharge a single large debt, as in In re Zick, 931 F.2d 1124 (6th Cir. 1991).

The Court finds that the "bad faith" asserted by the Kemps can be addressed in the bankruptcy context and does not rise to a level of egregious conduct or abuse and manipulation of the Bankruptcy Code sufficient to warrant dismissal for "cause" under § 707(a) as was the case in In re Huckfeldt, 39 F.3d 829 (8th Cir. 1994), where the debtor had non-economic motives for filing his Chapter 7 case. Moreover, the Kemps submitted no evidence of any violations of any technical or procedural requirements of Chapter 7, such